Good morning, your honors. The main theme of our interview is looking from the South towards our base on the San Ramon. It must involve traveling from Sweden to Vienna for a month. Your honors, in that case, it seems that the course is aimed toward deep architecture or therefore various systems of under-tribalism, which is the situation in which we live. After a court between the parties in court, the exegetes begin their tenure in the House of Members since we started out. The court finds that there are two options in the mandatory position. The court realizes it's been decided to challenge the use of the same opposition and challenge here to that end. After that, we see something else that is a little bit more nuanced. There are a few events about a downward trend to the mainstream. This is not the case of the HMCU. The HMCU just won the sentence. For that reason, we are arguing that it's a new sentence. We should be taking it in terms of the instrument in which it is used in theory. Of course, there are some similar stories to the one that I gave you last year. So, there's always that red tape. We found it in the HMCU, where some of us have been doing the HMCUs for a long time. There's a small number of similar stories. We have had instances where a client wants to do a post-advocacy for asking for a cease and desist hearing. The other issue being that the HMCU is a vice-primary and the HMCU is a substitute. And, of course, you're a vice-secretary. Of course, the HMCU doesn't want to do anything. What's your response to that? Well, Your Honor, in this case, the defense has filed a tentative memorandum asking for either a severance or termination of the client's abortion or a period of termination of the client's abortion. And that's what, first of all, starts the hearing. That's the end of it. After 20 months, it's too much. So, that's certainly included. Sorry to have to keep adding to a lot of that. And, you know, you guys expressed different concerns. I'm going to pronounce these things frustrated by what it feels like to be treated unfairly by a 19-year-old subject who's had an abortion for, you know, 10, 15, over 10 years, you know. And so, it's certainly, there's a lot of proof here that the judge wasn't sentenced to an abortion under a 20-month sentence. It's just that that's my theory. My legal theory is it's official, too. I don't need to change the sentence. I'm going to change the sentence. That's just my guess. And, you know, you're starting to deal with this. I'm for a hospice request. I'm not for a hospice request for a term of parents, which, as the court has said, and I know that this court has said, when such a request is made, the court should announce its reasons for doing or not doing it, and some of their reasons. That's why I think this is a smooth maneuver. Another issue in case we are not happy to take more questions on is when, you know, when the address you asked for, for Richmond's reference, clearly did pour into the entire sentence, which we did file for. But then, of course, it would just start coming into the judiciary. So we're really just asking that the judiciary be informed when the court announces it. I'm going to change the sentence. Court, your Honor, so thank you to the court. As you all know, here in the United States, most of the rate of these cases really are low, very low. The sentence is very, very low. And I think that is exactly why you bring that back to the committee. Yes, sir. The address was supposed to be made for four different vendors, but you have four particular names in the judiciary. I'm interested to know the significance of this. Well, one thing I know you have is that a certain factor may be considered. Yes, sir. Yes. Your Honor, as the basis of the impartial records, I would importantly point out that, of course, I don't do self-importance. If you travel into any other country, you do self-importance. Your Honor, the chances of seeing the sentence after three months is possibly higher in Georgetown or in some other geographic area. Understandably, seeing a self-impedant case earlier today does not mean, of course, saying the court has to confer an impartial jury. There's a chance for both. I mean, the court would have to say that sentence of saying they conferred an impartial jury, you know, is sufficient. It would be impossible, the court would have said, if they conferred an impartial jury, to create a review of these cases, which would be insufficient. Your Honor, as the basis of the impartial records, I would importantly point out that, of course, I don't do self-importance. If you travel into any other country, you do self-importance. Your Honor, the chances of seeing the sentence after three months is possibly higher in Georgetown or in some other geographic area. Understandably, seeing the sentence of saying they conferred an impartial jury, you know, is sufficient. Your Honor, as the basis of the impartial records, I would importantly point out that, of course, I don't do self-importance.  Your Honor, the chances of seeing the sentence of saying they conferred an impartial jury, you know, is possibly higher in Georgetown or in some other geographic area. Understandably, seeing the sentence of saying they conferred an impartial jury, you do self-importance. Your Honor, to weigh in, you can see considerations in these cases. You can look on the other side. The interesting thing is the agency. The agency's been on the streets. These things are coming to you. So, to you, you should really try to work on them. I'll give you the future. But, Your Honor, the problems are about that. We have a lot to consider. And then, if you want to qualify, where is this from? The agency's been on the streets. I can't be sure what they said. But, you know, there's that distinction. But why do you weigh in on that? Your Honor, I'm not saying I'm not aware of it. So, I can't give you a premeditated answer. But, Your Honor, I know this is a huge issue. I'm not saying I'm not aware of it. It gets to you. But, based on what we're going to review here, there's nothing in the immigration chain that encourages us to be a traitor. So, there are a lot of factors that are being part of the process for us. But, because of the three judges that I just mentioned, there are a lot of things that the agency's been on the streets and seriously doing that isn't your thing. Or, as Melissa just mentioned, the FBI's been on the streets for over 120 months, I guess. Your Honor, I'm in theory and gradually, it's the same that the types of people that are being convicted of criminal crimes, whether they be your son, your daughter, your brothers, your son-in-law, your nieces, your co-sponsors, will be on top of this for a very long time. And, the courts, I would say, it's a very different case for me. So, the FCC, it's new, we shouldn't be the first to ask for an injury just because they were on the streets for 20 months. So, it's like, even the emergency department, you know, there's a COVID-19 war in New York, so that's why you're here. It's like, the agency's not going to go to all the wars we have. And, the FCC, you're going to be on the streets for 20 months, and you're going to be on the streets for 30 months. And, it's a very important point, and overall, the Supreme Court's decision to dismiss this court, just as a whole, just on the instance of a period, is a, is a decision that's just not consistent. And, the agency is, it's been administratively administrated by the administration, 1784.2, which I think is a new agency, in terms of services, in terms of admission, in terms of, you know, getting everything. So, you're going to be on the streets for 20 months, and you're going to be on the streets for 30 months. So, that's why it's not new. So, why is it that we're, well, that's one of the reasons why we shouldn't be on the streets. Because, you know, you're on the streets, and this is a new day. So, why are you, why are you on the streets? Because, we're going to be considered, on the record, by the district courts, the district courts, and the 20,000 companies, certainly, from the general, most of them, taxpayers, but they have the policy in mind, and then, to see, it's considered, and, based on, this person, in the party, that, he, that, that's right, or he acknowledged it, and he brings the papers, but he sends, you know, the papers, with the parties, and he's trying to, to, to remove the court, and to be considered, and to, tutaj au to, to, to, to, to, to, to, to, to, to, to, to, to, to, to, to, to, to, to, to,
judges: Reinhardt, Thomas, Christen